# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT WILHELM, | ) |
| Plaintiff, | ) ) ) Case No. _____ |
| v. | ) ) ) |
| KADMON HOLDINGS, INC., HARLAN W. WAKSAL, TASOS G. KONIDARIS, EUGENE BAUER, CYNTHIA SCHWALM, DAVID E. COHEN, NANCY MILLER-RICH, and ARTHUR KIRSCH, | ) ) ) ) ) ) ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** JURY TRIAL DEMANDED |
| Defendants. | ) ) ) |

Plaintiff Robert Wilhelm ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Kadmon Holdings, Inc. ("Kadmon" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Sanofi ("Sanofi") will acquire the Company through Sanofi's subsidiary Latour Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

---

[1] Non-party Sanofi is a société anonyme, a form of limited liability company, organized under the laws of France. Sanofi's common stock trades on the Nasdaq Global Select Market under the ticker symbol "SNY." Non-party Merger Sub is a Delaware corporation and wholly owned indirect subsidiary of Sanofi.

2. On September 8 2021, Kadmon and Sanofi jointly announced their entry into an Agreement and Plan of Merger dated that day (the "Merger Agreement"). That agreement provides Kadmon stockholders will receive $9.50 in cash for each Kadmon share they own On October 4, 2021, Kadmon filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Kadmon stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

3. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

4. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a stockholder of Kadmon.

9. Defendant Kadmon is a Delaware corporation with its principal executive offices located at 450 East 29th Street, New York, New York 10016. Kadmon is a biopharmaceutical company that discovers, develops, and delivers transformative therapies for unmet medical needs. Kadmon's common stock trades on the Nasdaq Global Select Market under the ticker symbol "KDMN."

10. Defendant Harlan W. Waksal ("Waksal") has been President and Chief Executive Officer ("CEO") of the Company since August 2014, and a director since 2013.

11. Defendant Tasos G. Konidaris ("Konidaris") is and has been Chairman of the Board since 2019, and a director of the Company since February 2017.

12. Defendant Eugene Bauer ("Bauer") is and has been a director of the Company since 2010.

13. Defendant Cynthia Schwalm ("Schwalm") is and has been a director of the Company since January 2019.

14. Defendant David E. Cohen ("Cohen") is and has been a director of the Company since February 2019.

15. Defendant Nancy Miller-Rich ("Miller-Rich") is and has been a director of the Company since August 2020.

16. Defendant Arthur Kirsch ("Kirsch") is and has been a director of the Company since 2019.

3

17.     Defendants identified in paragraphs 11-16 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

18.     On September 8, 2021, Kadmon and Sanofi jointly announced in relevant part:

PARIS and NEW YORK – September 8, 2021 – Sanofi has entered into a definitive merger agreement with Kadmon Holdings, Inc. (NASDAQ: KDMN) a biopharmaceutical company that discovers, develops, and markets transformative therapies for disease areas of significant unmet medical needs. The acquisition supports Sanofi's strategy to continue to grow its General Medicines core assets and will immediately add Rezurock™(belumosudil) to its transplant portfolio. Rezurock is a recently FDA-approved, first-in-class treatment for chronic graft-versus-host disease (cGVHD) for adult and pediatric patients 12 years and older who have failed at least two prior lines of systemic therap.

Shareholders of Kadmon common stock will receive $9.50 per share in cash, which represents a total equity value of approximately $1.9 billion (on a fully diluted basis). The Sanofi and Kadmon Boards of Directors unanimously approved the transaction.

"We are transforming and simplifying our General Medicines business and have shifted our focus on differentiated core assets in key markets," said Olivier Charmeil, Executive Vice President General Medicines. "We are thrilled to add Kadmon's Rezurock to our well-established transplant portfolio. Our existing scale, expertise, and relationships in transplant create an ideal platform to achieve the full potential of Rezurock, which will address the significant unmet medical needs of patients with chronic graft-versus-host disease around the world."

"We are excited that Sanofi has acknowledged the value of Rezurock and the deep potential of our pipeline," said Harlan Waksal, M.D., President and Chief Executive Officer, Kadmon. "By leveraging Sanofi's global resources and long-standing expertise in developing and commercializing innovative medicines, Rezurock is now well positioned for global accessibility, faster. I want to thank the entire Kadmon team, including management and the Board of Directors, and the Sanofi organization, for their ongoing commitment to patients and their caregivers."

Sanofi's transplant business mainly consists of Thymoglobulin® (anti-thymocyte globulin), a polyclonal, anti-human thymocyte antibody preparation that acts as a broad immunosuppressive and immunomodulating agent and Mozobil® (plerixafor), a hematopoietic stem cell mobilizer. Both products are among General Medicines core assets and are currently registered and marketed in more than 65 countries.

In July 2021, the FDA approved Rezurock for the treatment of adult and pediatric patients 12 years and older with cGVHD after the failure of at least two prior lines of

systemic therapy. Rezurock was launched in August in the United States. It is the first and only approved small molecule therapy that inhibits the Rho-associated coiled-coil kinase 2 (ROCK2), a signaling pathway that modulates inflammatory response and fibrotic processes. Sanofi will work closely with regulatory authorities across different geographies to ensure that patients suffering from cGVHD can benefit from belumosudil treatment as early as possible. Kadmon is also developing Rezurock for the treatment of diffuse cutaneous systemic sclerosis, with an open-label Phase 2 clinical trial currently ongoing.

Kadmon's pipeline includes drug candidates for immune and fibrotic diseases as well as immuno-oncology therapies.

The transaction is expected to be modestly dilutive to Sanofi's EPS in 2022.

**Transaction Terms**

Under the terms of the merger agreement, holders of Kadmon's common stock will receive $9.50 per share in an all-cash transaction, reflecting a total equity value of Kadmon of approximately $1.9 billion. The offer price represents a premium of 79% over the closing price on September 7, 2021 and a premium of approximately 113% over the 60 trading days volume weighted average price.

The consummation of the transaction is subject to customary closing conditions, including the approval of holders of a majority of the outstanding shares of Kadmon voting stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the merger, a wholly owned subsidiary of Sanofi will merge with Kadmon and the outstanding Kadmon shares will receive $9.50 per share in cash. Sanofi plans to fund the transaction with available cash resources. Subject to the satisfaction or waiver of customary closing conditions, Sanofi expects to complete the acquisition in the fourth quarter of 2021.

Weil, Gotshal & Manges LLP is acting as legal counsel to Sanofi. Cantor Fitzgerald & Co. and Moelis & Company LLC are acting as exclusive financial advisors to Kadmon in the transaction, while DLA Piper LLP (US) is acting as legal counsel.

**The Proxy Statement Contains Material Misstatements or Omissions**

19.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Kadmon' stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

20.     Specifically, as set forth below, the Proxy Statement fails to provide Company

stockholders with material information or provides them with materially misleading information concerning the valuation analyses underlying the fairness opinions provided by Cantor Fitzgerald & Co. ("Cantor") and Moelis & Company LLC ("Moelis," and collectively with Cantor, the "Financial Advisors"), financial advisors to the Company. The Proxy Statement also omits material information concerning potential, material conflicts of interest effecting Kadmon insiders.

*Material Omissions Concerning the Financial Analyses Relied on by the Board*

21. The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by the Financial Advisors.

22. The Proxy Statement describes the Financial Advisors' respective fairness opinions and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the Financial Advisor's work. As a result, Kadmon stockholders cannot assess what significance to place on the Financial Advisors' fairness opinions in determining whether to approve the Proposed Transaction or otherwise act.

23. With respect to Cantor's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis; (b) the bases underlying Cantor's assumption that the Company's after-tax unlevered free cash flows would decline in perpetuity after December 31, 2034, at a rate of 60% to 10% year-over-year; (c) the Company's estimated cash, debt, convertible preferred stock and other liabilities; and (d) the number of fully-diluted shares of Company common stock utilized in connection with the analysis.

24. With respect to Moelis's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the Company's federal and state net operating losses and federal research and development tax credits; (b) the Company's estimated December 31, 2021, cash balance (net of debt);

(c) the Company's terminal year after-tax unlevered free cash flow used to derive the terminal values for the Company; (d) the terminal values for the Company; and (e) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis.

25. With respect to Moelis's review of one-year forward stock price targets for the Company, the Proxy Statement fails to disclose: (a) the individual price targets observed; and (b) the sources thereof.

26. With respect to Moelis's analysis of premiums paid, the Proxy Statement fails to disclose: (a) the identities of the acquisitions observed; and (b) the individual premiums for each of the acquisitions.

27. The omission of this information renders the statements in the "Opinions of the Company Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

28. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Kadmon insiders, including the details of all employment and retention-related discussions and negotiations that occurred between Sanofi and Kadmon's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Parent's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

29. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management

7

and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

30. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

31. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Kadmon stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

32. Plaintiff repeats all previous allegations as if set forth in full.

33. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

34. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion

provided by Evercore. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

35. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

36. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

37. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

38. Plaintiff repeats all previous allegations as if set forth in full.

39. The Individual Defendants acted as controlling persons of Kadmon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Kadmon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

42. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

43. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Kadmon' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Kadmon, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material

information identified above to Kadmon stockholders;

      B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

      C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

      D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 19, 2021          **LONG LAW, LLC**

By  */s/ Brian D. Long*
     Brian D. Long (#4347)
     3828 Kennett Pike, Suite 208
     Wilmington, DE 19807
     Telephone: (302) 729-9100
     Email: BDLong@longlawde.com

*Attorneys for Plaintiff*